number 20-3634. And you may approach the podium. Also, everybody, you can take your mask off when you're arguing. So I think you're supposed to leave them on in public places. So you can proceed. Oh, actually, are you going to reserve time for rebuttal? Yes, Your Honor. Three minutes, please. That's great. Thank you. Okay, you may proceed. Good morning, and may it please the Court. My name is Soumya Veshapayan, and I'm being supervised by Alexis Carderon, counsel for appellant Robert Lamar Whitfield. Welcome. Mr. Whitfield was caught up in one of the ATF's fake stash house reverse stings in 2012. One of the big problems with this case is the appearance. You might have a case for selective enforcement. Or whatever it might be. But in this case, your client stepped up, volunteered himself. They were looking at someone else, and he goes, I'm your guy. And doesn't that really kind of wipe out anything that conceivably could happen thereafter? And I realize on this, we granted a certificate of appealability, but the appearance doesn't help here. What's your response to that? Your Honor, this Court has already determined in United States v. Washington that even if a defendant does volunteer for a fake stash house reverse sting, a claim of selective enforcement may still be applicable. And that is because even if a defendant does volunteer, the ATF still has a decision-making process in which they are deciding whether to allocate resources. And that decision-making process could still be infected by unconstitutional race discrimination. In particular, if the defendant had been white who had volunteered. But I think the argument would be that no matter what race this person is, no matter what ethnicity this person is, no matter what gender this person is, when you step up and say, forget the other person, I'm your person, how could you not enforce that? I mean, it would be derelict not to enforce against him in connection with this because he wants to do the deal. Your Honor, two points. So the first is that we just don't know because there hasn't been discovery in this case. We don't know how the ATF makes its decision about who to pursue. And so we don't know what criteria. Can you imagine any circumstance in which they wouldn't enforce against him? I'm sorry, Your Honor. Can you imagine any circumstance in which under these facts they would not enforce or arrest him and turn it over to the prosecutor? Your Honor, I think it just depends on what they're looking at. If, for example, my client doesn't have, our client doesn't have a major criminal record. So if hypothetically that were one of their selection criteria, which we just don't know. What does he have? So, Your Honor, a lot of the... I mean, what does he have against him? He has, they're calling him up someone else and he says, no, I can do this. I can do this job. I know what I'm doing. I can get the crew. Ba-boom, ba-boom, ba-boom. So this was contested at trial and a lot of the trial record is sealed. So I don't want to refer to bits of it in open court. But it was contested what he thought he was getting into and what actually happened during this interaction. And this just goes back to the fact that we don't know what happened. We don't have discovery in this case. Regarding this idea of selective enforcement, were there any cases out there at that time that said that selective enforcement itself is a problem? Your Honor, that said selective enforcement, that had granted the claim of selective... In other words, what's wrong with selective law enforcement? It's unconstitutional race discrimination, Your Honor. At the time, a few days before... Were there any cases that said as much? I'm not aware of a recent case around the time of Mr. Whitfield's trial. But a few days before Mr. Whitfield's trial, an attorney in Illinois filed a discovery motion for racial profiling. That's what I... Just picking up on Judge Fuentes' question. Yeah, we know about the USA Today article. And you do cite cases, and we found cases that granted discovery in selective enforcement cases. But that was after the trial. Can you cite any cases before the trial, or during the trial, I suppose, of your client that granted discovery in these kinds of cases? Your Honor, I'm not aware of a case before the trial, but there were motions. There was one motion filed a few days before Mr. Whitfield's trial for selective enforcement in... For discovery. Selective enforcement discovery, I apologize. And there was a motion also in Illinois filed about a month after his trial. And both of those motions were granted on July 31st, 2013. That is the essence of your case, isn't it? Selective law enforcement. Yes. And if we say that there was no opinion, no statement that selective law enforcement was barred or was not a problem, then you essentially lose your case, right? Your Honor, what we're arguing is that on these facts, when the government creates a crime that results in the arrest of several black defendants in a single case... Is it the government that created the crime? We contend that it is, Your Honor. Because they invited your client to commit a robbery of some sort? They came up with the entire idea. They chose to approach my client to get in contact with another person. They... It was a... The inception came from the government. You take into account that your client had no problem in agreeing to what the government was offering? Your Honor, this was disputed at trial. I just don't want to cite two particular pieces of the record in case they're sealed. But there was a dispute over what he thought he was getting into at trial. What procedure or substantive right was Mr. Whitfield deprived of by Mr. Farrell's waiver of his right to seek discovery? Your Honor, Mr. Whitfield was deprived of the right to challenge the investigation that led to his arrest. And this... He lost the right to challenge it on the basis of unconstitutional race discrimination because of Mr. Farrell's untimely discovery motion. The essence of your case is discrimination. I mean, if he were not black, you wouldn't have the same case. Across the United States, in these fake stash house reverstings, defendants have been Hispanic. I think it just depends on the facts of the case. But here my client is black, as were all of his co-defendants. And that's pretty much the essence of your case. In other words, he was targeted because of his color. We just don't know because of the lack of discovery. But had Farrell moved for discovery in a timely manner, he may have had the opportunity to do this fact finding. What is the essence of your case? The essence of our case is that but for Farrell's untimely discovery motion, this court may have followed... claims in Mr. Whitfield's direct appeal, reversed the district court, and remanded back for discovery. It sounds like your case is based on denial of a request for discovery, then. It's... Well, our case was Farrell waived the discovery by moving in an untimely manner. He waived it. And had he moved in a timely manner, our prejudice argument is that even if the district court had rejected the discovery motion, on direct appeal, this court may have... There's a reasonable probability that this court would have announced its discovery standard for selective enforcement discovery claims in Mr. Whitfield's direct appeal, reversed the district court, and remanded back down. And that is enough under cases... The problem with that is we don't know if he had appealed prior to the Washington decision coming down in 2017. We just don't know. I mean, maybe on these facts, this might have just been a not-presidential opinion affirmed, and that would be it. Your Honor, a reasonable probability is not a stringent standard, this court has said, and our argument is that Washington, the United States v. Washington case, involved a fake stash housing in the Philadelphia area, and its appeal was a year after our client's case. And so the issues on appeal were very similar, this selective enforcement issue. I mean, obviously, we're looking at counsel's performance in this case, all right? And, you know, at this time, there was, until this USA Today article and a judge in Illinois granted relief, how can we blame counsel for basically following what, really nothing? He had no real basis to go on. Matter of fact, the two circuits that had considered whether Armstrong applied or not went against. So can we really blame counsel for not bringing the motion any earlier? Your Honor, I think we would be in a different situation if Farrell had made a strategic choice, a conscious decision to not move for discovery, but that is not the case here. But you have to acknowledge, all cases, all the cases say you don't have to bring every conceivable constitutional claim. And, you know, this would have been a real stretch at the time, I think, right? We believe that it wouldn't be a stretch, you know, in these circumstances where the government created the crime and all of the people arrested were black. And, you know, he looked at the facts were all in the public record, that in these fake stash house stings in the Eastern District of Pennsylvania, all 26 of the people arrested had been black in these stings. And these were all facts he cited later. But had he moved to investigate before trial as his duty to conduct a reasonable investigation compelled him to, he would have discovered this and he would have moved for selective enforcement on these facts. Also, we're talking about you said waived. I think you're talking about forfeited, right? He forfeited because he didn't raise it. He actually didn't intentionally relinquish any right to bring this, I think, right? Your Honor, this court did characterize it as forfeiture. I think another opinion might have referred to it as waiver. Okay. We've been known to do that. Yes. I just want to make, I see I have one minute remaining. I just want to make one small point. So we believe that Mr. Whitfield has established ineffective assistance of counsel, and thus he should have received an evidentiary hearing under 2255B. And Mr. Whitfield would want to conduct very limited discovery on remand, focusing on three key areas, some of it which was discovered, which was explored. I'm sorry to interrupt you, but what exactly are you looking for? Are you looking for a hearing? I was not clear on what actual relief you're seeking. Yes, Your Honor. We are looking for an evidentiary hearing into whether Mr. Whitfield was the victim of unconstitutional race discrimination or selective enforcement. All right. And the district court, I would imagine, would have quite an amount of leeway in deciding how to hold this evidentiary hearing, including discovery. And Mr. Whitfield would seek to conduct a limited discovery into three areas, first, documents memorializing the ATF's decision to pursue him, second, ATF guidance for selecting targets in fake Stash House reverse stings, and third, whether the government's had any complaints or reports about race discrimination from anyone tied to his investigation. And I see that I have a question. I may have missed it, but what should counsel have done that he did not do? Farrell should have moved for discovery on selective enforcement before trial. That's the essence of your case. That is the essence of our case, yes. Okay.  Thank you. We'll get you on rebuttal. Thank you. Thank you. We'll hear from the government. Good morning, Your Honor. May it please the Court, Robert Zosmar on behalf of the government. It's very nice to see all of you in person. Likewise. Our position, Your Honor, is that the defense has not made out either prong of the  that counsel was ineffective in not making an argument that pretty much nobody was making at that point in time. And second, that the result, they have not shown any reasonable probability of a different result, in part because of the very unusual circumstance here, that we essentially had the same discovery proceeding after the Washington case, involving the very same investigators, the very same project, exhaustive discovery that was supervised by Judge Slomski, who found no discrimination in a 53-page opinion, which is public and is available to everyone. And it's for those two reasons that the claim is not made out here. To answer Judge Flinken's question from before, was selective enforcement known, was it identified, as of the time when this trial was starting in 2013? The answer is yes. One of the very interesting things here is that we also know what would have happened on appeal in this case had Mr. Farrell sought discovery, as my new friend, Mr. Vaishampayan, was suggesting this morning. Because on appeal, they did raise the issue, belatedly. This court said it was a forfeiture. But this court also had a footnote in which it said, basically, we would have agreed with Judge Sanchez that the Armstrong standard applied. This is... It's an MPO, too, though, right? Excuse me? You're talking about an MPO right now, or are you talking about Washington? I'm talking about... No, I'm talking about this case, in the Whitfield case. Oh, but it was not for publication opinion, right? Correct, correct. But it is presidential, as to Mr. Whitfield, because this is his case. And this court's decision in the Whitfield case, authored by Judge Smith, has this footnote, which is extremely important. It's on page 211 of the appendix. And it's in that footnote that the court anticipated and answered Judge Flinken's question and says, the standard for selective enforcement has been identified. They cite a Supreme Court case. And they say that it's the same as the selective prosecution standard, which is one has to show evidence of both discriminatory effect and discriminatory intent. And so what the court then says, even though, having just said that he forfeited the issue, they go on in the footnote to say, while we not reach the issue, we also think the district court did not abuse its discretion in applying the Armstrong standard to deny defendant's discovery request. And, of course, Armstrong is a pretty high hill to climb, right? A very high hill to climb. And that's what's been the case, and many have observed that and criticized that. But that comes from the U.S. Supreme Court. And so what we have here is not just Mr. Farrell, in 2013, not seeing any issue here to raise when you can't meet the Armstrong standard for discovery, but this is 2016, and this is Judge Smith, Judge McKee, Judge Hardiman, very estimable group of jurists who also don't see an issue. And so to say then that Mr. Farrell was constitutionally ineffective outside the wide range of professional responsibility by not raising an issue that pretty much nobody else was raising, except for, as it turns out, a handful of lawyers in Illinois who had some success, that is not ineffective assistance of counsel. And that's the first problem. This may not be the case for what we should do from here, but at some point should Washington be extended or what in connection with if you've got 100 percent of individuals who happen to be of a particular race, there are questions. And so how should a court go about looking at that from both sides? You know, it's conceivable that could happen. It's arguable that it's just selective enforcement. So what test should we use? Well, Washington is now the law of this circuit, and I believe it answers the question. This is a troubling thing when you just look at the bare facts and you see that there was one project and a group of people were prosecuted, and they're all of one race. That is a cause for concern, and thus we didn't question, we didn't further challenge the Washington decision. Instead, what we did was we dived in. We did what the court said. We're sending this back to Judge Slomski. We are directing him to do what he thinks best, to do this discovery process step by step. We spent many, many months on this over a year. I personally handled the post-Washington litigation. We brought in everybody from ATF and everybody else involved to get all the information that the court and the defense wanted, and so I hope that answers Your Honor's question. We did a full investigation. We provided it to the court, and you have the results of that investigation, which is that, yes, it turned out that most people in this group who were prosecuted turned out to be of one race, but there was explanations for all of it. There was no proof of any discriminatory intent. There was no proof that anybody similarly situated was not prosecuted. There were white people who were identified as suspects, and they were not prosecuted because they didn't show up. They didn't do what Washington did, which was raise his hand, volunteer, and show up at the opening. Whitfield. I'm sorry? Whitfield, right. Whitfield, I'm sorry, and Washington. You know, the interesting thing in Washington, and Judge Slomski addresses this also, is he's in the same position as Whitfield. He wasn't targeted either, just like Whitfield wasn't targeted. Washington was brought in by the main defendant in that case, who was the target, and that was another problem that Washington had in his claim that was ultimately unsuccessful and was denied by Judge Slomski. Out of curiosity, are there more of these in the pipeline? There are not. This was controversial. Types of cases, I mean. Not in our office, Your Honor, and I believe very few probably of any around the country. This project really was over by 2014 or 2015. It was controversial. Nobody's denying that. And you've read our decisions. Some haven't been too pleased with it. No, and I will also tell you that there are people within the executive branch that may not be too pleased with it either, and it's not happening now. Okay. But that's not to criticize ATF completely. There is a valid purpose for the government trying to identify people who want to engage in violent activity and stopping them before they do that. And if ever there were an example of that, that's Mr. Whitfield. Mr. Whitfield not only volunteered, but there were recordings introduced at trial in which he discusses his past robberies in order to, you know, vouch for his abilities to the undercover agent. Just if I may touch on briefly on the second prong regarding the reasonable probability. Ms. Weisselmeyer says that, you know, they want limited discovery here, but it has happened. This is an unusual thing where, you know, what they have to show is a reasonable probability of a different result. Well, that doesn't just mean you'd win a pretrial motion for discovery. Just so we can be clear, is it a reasonable probability of a different result on appeal? Well, no, because what's being alleged here is ineffective assistance of trial counsel. Okay. Appellate counsel did raise the issue, as we know, and that's the opinion that I read to you. So the question is, if this had been raised before trial, would they have received discovery? Would the court then have adopted the Washington standard in advance? Would they have gotten discovery, and what would the result be? Because your adversary does say it should have been him, not Washington, who was sort of on the lead case. That's right. And that leads to the point I want to make, which is to say the only argument we're hearing here today is let me try also. And let me try is not a reasonable probability of a different result, particularly where we have this exhaustive record involving the exact same investigation. At the end of her argument this morning, Ms. Weischenpine listed three things that she said they would want. They would want, first, documents regarding how Whitfield was selected, and second, the guidance that was given. That was disclosed at trial. That was the trial in this case. And they say it in their brief as well, that they want discovery as to how Whitfield was targeted. Bowman, the case agent, testified. Edwards, the undercover agent, testified. That was all laid out in front of the jury. These men were cross-examined, and the jury found beyond a reasonable doubt that he acted with the intent to commit this robbery. So that discovery has really happened. And then the last thing she mentioned this morning was any report regarding the investigators, whether they even engaged in racial intent. This is what Judge Slontke zeroed in on. Initially, what we provided in the Washington case was we gave him any background regarding Bowman and Edwards and their supervisor, against whom there have never been any suggestions or allegations by anyone in any case of racial discrimination. And Judge Slontke said, that's not enough. I want the records regarding the 40 other investigators who have been involved in any one of these stash house sting cases in the Third Circuit. We said, all right, well, can we limit it to Philadelphia? He said, no. He wants everything for the entire circuit. We gave it to him. We found these two minuscule incidents that took place many years later. We disclosed all the information. It's not there. So saying there's a reasonable probability of a different result has to be more than, I want a chance also, when you have this record regarding the exact same investigation. And so that's why, you know, we submit that, respectfully, neither prong of the ineffectiveness test has been met here. So in your view, a different counsel would not have made any difference? No, I don't believe so. And I can also tell you from my perch, you know, dealing with these issues, this argument was not raised before 2014, 2015. It's really the Seventh Circuit decision that comes later. In Davis. In Davis, right, that then suggests to this court what it does in Washington. But I am pleased that I can stand here saying we did have the discovery, essentially, for this case as well. I'm not just resting on Armstrong. There just is no evidence that anybody similarly situated was not prosecuted. There's no evidence of any discriminatory intent. Thank you, counsel. Thank you. Your Honor. You can take your time. We're on the clocks now. Your Honors, I wanted to address four points on rebuttal, and I will try to keep within the time. First, on the discovery that the government did do in Washington. I just want to say, I mean, the government relies pretty heavily on there and said, hey, this has been done. No need to go back and redo this. But I want to emphasize that Mr. Whitfield was not a party to the Washington investigation. So these are different parties, and he's never had it. But there wouldn't be a commonality in the discovery issues? There could be a commonality, but a lot of that discovery, some of it was disclosed in Judge Slonsky's opinion. Not all of it was disclosed. A lot of it was sealed. So Mr. Whitfield just hasn't had this opportunity. Second, I want to address a point the government made about prejudice. So prejudice here occurs on looking, typically prejudice is the outcome of the proceeding. But this court, from Virgin Islands v. Forte to United States v. Menino, and more recently United States v. Scripps, has said that the prejudice is the outcome on the appeal. And it doesn't matter what happens on remand. In Menino, for instance, it was a sentencing error. Your adversary disagreed with that. We believe the cases from this court establish that the result of the appeal determines prejudice and whether this court would have reversed and remanded back down. Both Menino and Forte are very helpful. I'm happy to explain some facts if that helps, or I can proceed to make my other two points. Go ahead, make your other two points. Okay. So I wanted to note that abusive – so the footnote in this court's decision on Mr. Whitfield's direct appeal, the footnote talks about how it wasn't an abuse of discretion to apply Armstrong. But abuse of discretion isn't the right standard if this court were to assess the legal standard that governed selective enforcement discovery. That would be de novo review. So I don't think that measures whether a reasonable probability exists for Mr. – When you look at the Washington decision of Judge Fuentes, it talks at the very end on page 220, the standard guiding the district court's discretion. So it is discretion is different. Armstrong remains the lodestar. The district court retains the discretion to conduct a limited pretrial inquiry into the challenged law enforcement practice on a proper that shows some evidence of discriminatory intent. It goes on and says a defendant did not at the initial stage provide some evidence of discriminatory intent or show that similarly situated persons of a different race or equal protection class were not arrested. However, the proper must be strong enough to support a reasonable inference of discriminatory intent and non-enforcement. If the district court finds that the above has been made, it may. It doesn't have to conduct limited inquiries of the sort recommended in Davis. That seems to be about as good as you can hope for. Your Honor, if I may continue, I have five minutes. Go ahead. So the proffer in Washington was very similar to the untimely proffer that Farrell made. So the proffer that was sufficient to get discovery on remand in Washington, it's the same. It's a similar proffer of statistics. In United States v. Washington, I want to point your honors to page 213, where this court talks about the standard that you would apply. While discovery rulings are ordinarily reviewed for abuse of discretion, we exercise de novo review over the standards the district court used in exercising that discretion. And so I believe that's why the footnote in Mr. Whitfield's direct appeal, where this court said it's not an abuse of discretion to apply Armstrong, had this court been able to properly consider the discovery standard for selective enforcement on its merits, we believe they would have exercised de novo review and announced the decision that Judge Fuentes announced in Washington in Mr. Whitfield's direct appeal. And you have a fourth point. Go ahead. Judge Fuentes asked about whether there had been a selective enforcement case. So the Supreme Court has held that selective enforcement is valid for over 100 years, Yick Woe v. Hopkins. Great. Thank you very much. Thank you, counsel. Thank you. We'll take this case under advisement. And I want to thank counsel. We want to thank counsel. But in particular, counsel, are you a law grad?